ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. EWING.   (No. 7389.)*

(Court of Civil Appeals of Texas. Dallas. Oct. 9, 1915. Rehearing Denied Dec. 4, 1915.)

1. MASTER AND SERVANT ⬤⟋286—INJURIES TO EMPLOYÉ—DEFECTIVE HAND CAR—EVIDENCE —SUFFICIENCY.

In an action by a section foreman against a railroad company for injuries received by being thrown from a defective hand car, evidence *held* sufficient to take the question of the company's negligence in furnishing a defective car to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⬤⟋286.]

2. MASTER AND SERVANT ⬤⟋124 — SAFE APPLIANCES—HAND CAR—DUTY TO INSPECT.

Under its duty of furnishing safe appliances, a railroad company, before turning over to its employé for use a new hand car, bought from a reputable manufacturer, was bound to inspect the car to ascertain its condition, and could not rely on the supposition that the manufacturer had made such inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. ⬤⟋124.]

3. MASTER AND SERVANT ⬤⟋291 — SAFE APPLIANCES—VIOLATION OF DUTY—INSTRUCTION—HAND CAR—DUTY OF INSPECTION.

Where under the evidence it appeared that defendant railroad company had violated its plain duty to inspect a new hand car, bought from a reputable manufacturer, so as to ascer-

tain its condition before handing it over to plaintiff, its section foreman, for use, and no legal excuse is shown for the failure to so inspect, it was not error to charge that the company owed such duty, instead of leaving the question of inspection to the jury, to be determined under the general issue of negligence in providing a safe appliance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. ⬤⟋291.]

On Motion for Rehearing.

4. MASTER AND SERVANT ⬤⟋124—APPLIANCES FURNISHED TO SERVANT—DUTY TO INSPECT.

The duty of the master to inspect appliances furnished to the servant, other than simple tools, is to make some test which would satisfy a prudent person that the machine is safe for use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. ⬤⟋124.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by J. B. Ewing against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Scott & Ross, of Waco, for appellant. R. M. Vaughan, of Hillsboro, B. Q. Evans, of Greenville, and H. C. Bishop, of Hubbard, for appellee.

RAINEY, C. J. Appellee instituted this suit against the appellant to recover damages for personal injuries sustained by him while in the employ of appellant as section foreman, the allegation being that while the section hands were operating a hand car on defendant's track, the cogs of the car became locked from being geared too tight or too deep, throwing the car from the track, and resulting in injuries to him; that said car was defective for use, and the company was negligent in furnishing it for use in performing his duties. Appellant answered, in effect, that said car was new, and had been received with others from a reputable factory, which car was reasonably safe, and that it had used due care in the premises; that said hand car had been placed in the hands of appellee, who had used it for about 30 days and had never reported any defect to the appellant, and if he was hurt, it was due to his own fault; that if there was any defect in said hand car, it was a latent defect, unknown to appellant or appellee, and said condition arose out of and constituted one of the ordinary risks incident to the employment which was assumed by appellee; that the same was an accident, and could not have been foreseen, and for which no one is responsible. Appellee recovered a judgment for $4,000, from which this appeal is taken.

[1] The first assignment of error complains of the refusal of the court to give a charge, in effect, that there is no evidence showing appellant guilty of negligence, and

---

to return a verdict for defendant. The evidence shows that appellee was in the employ of appellant as section foreman; that appellant furnished appellee a new hand car for use on this section, which car had been just received from the factory, stamped "Sheffield." What factory made it, where situated, or its reputation, other than the name on the car, is not shown. The only testimony in regard thereto is that of appellee, who stated in effect, that he had known the Sheffield car about 20-odd years, and considered it a standard make, but could not tell where the factory was located. Appellee had been working for appellant for about 6 years, but had worked only one new car prior to this one and had had no trouble with it. He had worked with hand cars about 26 years, and up to this time never had such an experience with a car. He had used this car several days before the accident. He did not know what the trouble was, but it was shown to be too tightly geared, and he thought it worked that way because it was new. On the occasion of the accident he was on the car traveling down grade when, without warning, it suddenly stopped and jumped the track, throwing him off and injuring him. The car had, previous to this, on three or four occasions, in running made a grinding noise, which he attributed to its newness, and it never occurred to him that there was anything wrong with the machinery, but thought it was caused by the way it was handled by the men. "The first intimation I had that anything was wrong with the car was the sudden stop, and I went over." The car being geared too tight caused the cogwheels to sink too deep in the grooves, and caused them to bind when running, and liable to produce a lock and cause a wreck. Appellant furnished the car to appellee as it came from the factory, without having it inspected. Appellee was not a machinist, and supposed the car was all right. The testimony shown in the record is sufficient to raise the issue of negligence on the part of the appellant in furnishing a defective car for appellee's use, and it was proper for such issue to be submitted to the jury for their determination.

[2] The second assignment of error complains of the giving of paragraph 4 of the main charge of the court, which is:

"You are instructed that it was the duty of the defendant to have exercised ordinary care to furnish to the plaintiff a reasonably safe and suitable car to be used by him in the performance of his duty, and that it was the duty of said defendant, before said car was delivered to the plaintiff, to have caused the same to be examined to ascertain its condition, and that the plaintiff had a right to assume that the defendant had performed its duty in these respects, and was under no obligation to inspect the car for the purposes of ascertaining whether or not the defendant had performed its duty in these respects."

The criticism of this charge is, in effect, that the court erred in telling the jury in this case that it was the duty of defendant to inspect the hand car before delivering it to appellee for use; that under the evidence it was a question for the jury whether or not the defendant had used ordinary care in providing a suitable car. The evidence shows that the car was ordered by the defendant from a manufactory, which was a reputable concern, engaged in making hand cars of a standard make, such cars as were in use by railroads throughout the country. The car was shipped to the railroad by the manufactory and delivered by the railroad to appellee, the railroad never having made an inspection as to its suitableness for the purposes for which it was to be used. While the appellee had been operating hand cars for about 26 years, he had never operated but one new car prior to this one, and was ignorant at the time of the defect in this one which caused it to be derailed and to injure him. The charge, we think, stated the law correctly, but the appellant requested a charge which was refused by the court, which, in effect, told the jury that if the railroad had ordered the car from a manufactory of good repute, and one engaged in making hand cars for railway companies, and that they were recognized as standard cars, and that it was furnished for such use, and that it was delivered by the railroad to appellee for use in the condition as furnished by the manufacturer, then the railroad had used due care and to find for the appellant.

[3] Admitting that the evidence shows that the railroad used the care as stated in the special charge, was it sufficient to relieve it of the duty of inspection? We think not. The law imposes upon the master the duty of inspecting tools and appliances furnished to servants for use other than what are known as common or simple tools when defects are patent and obvious, and can be observed by the servant as well as by the master. This car was not shown to be a common or simple tool, and where the master has failed to inspect, as in this case, we take it that it will not be exonerated by relying on the supposition that the manufacturer did its duty, as there is no evidence that the car was inspected by the manufacturer.

In Railway Co. v. Blackman, 32 Tex. Civ. App. 200, 74 S. W. 74, where the injury was caused by a defective hand car, it is said:

"Ordinarily, the duty of inspection is one personal to the master, and he cannot, even by contract, shift the burden from himself upon the shoulders of his servant."

In discussing the duty of inspection by the master, Mr. Labatt, in vol. 3, page 2786, of his work on Master and Servant (2d Ed.) says:

"There are at least two very weighty reasons why the theory that a master is entitled, as a matter of law, to rely on the quality of appliances obtained from a reputable manufacturer should be rejected. One of these is that such a theory is essentially inconsistent with the doctrine of nondelegable duties. As between

master and servant, this doctrine should, it is submitted, always be regarded as controlling whenever it comes into conflict with that which declares that the employés of an independent contractor are not liable for his negligence. * * * The other reason is that, according to the rule adopted by most of the authorities, the servant has ordinarily no right of action against the manufacturer, and, if he cannot recover from his master, he cannot recover at all. Assuming the defect which caused the injury to have been discoverable by the exercise of proper care, some one ought, in fairness, to be held responsible for its existence, and it is a mere mockery of justice to absolve the master simply on the ground that he was justified in trusting to the skill and diligence of a person who, if that skill and diligence were, as a matter of fact, not exercised, is not liable to the servant because there is no privity of contract between them."

We think the principle here announced is sound, and that the charge of the court is applicable to the facts as adduced by the evidence. As a rule it is a question for the jury to say whether or not negligence has been committed, but when, as in this case, the master has ignored a plain duty, and there is no legal excuse shown for so doing, we think it is not error for the court to so state to the jury. The appellee had the right to assume that the railroad had done its duty, and the question of assumed risk does not apply.

Finding no reversible error in the record, the judgment is affirmed.

### On Motion for Rehearing.

Appellant, in its motion for rehearing, objects to our finding of fact wherein we stated that the car in question had been "just received from the factory," when it had been in use by appellee for at least 17 days, and also that we were in error in stating:

"What factory made it, where situated, or its reputation, other than the name of the car, is not shown."

Appellee was the only witness who testified on that point, and he stated in part as follows:

"I have managed and operated hand cars for 27 years. I could not tell where the factory is located where this car came from, but I think it is in Missouri. I understand that this car, together with a number of others, was ordered by the company from that factory, and the factory had shipped them to the company. The hand car was a Sheffield make. I suppose it was put up by the Sheffield Company. The name of the car was the Sheffield car. I have known the Sheffield car about some 20 years, and state as a railroad man that the Sheffield car is recognized as a standard car. I mean by this that a Sheffield car was always considered as a good car, well put together and well manufactured. It was considered a reasonably safe car for the purposes for which it was intended to be used."

There is no testimony other than this as to the make, the factory which made the car, or that the railway company had made any inspection of it, or that before it was turned out by the factory it had made an inspection or test of the car. Appellee states:

"I understand that this car, together with a number of others, was ordered by the company from that factory, and the factory had shipped them to the company."

Conceding that the understanding of the appellee is sufficient to show the facts stated by him are correct, was the appellant authorized to rely solely upon the reputation of the factory, about which there is no testimony, other than the mere facts of being ordered and furnished, sufficient to show ordinary care on the part of appellant in furnishing the car to its servant?

[4] It is urged by appellant that the quotation in our opinion from Labatt's work on Master and Servant is but his individual opinion, while in the same connection he announces that the weight of authority is that buying a new machine from a reputable manufacturer is conclusive proof of the use of due care on the part of the master. While the excerpt quoted is the individual views of Mr. Labatt, who is a law-writer of reputation, we think they are sound in principle, and in the absence of a holding from our Supreme Court on the question, we adopt them in preference to the holding in some other jurisdictions, which hold that the master has done his duty when the appliance has been purchased from a reputable manufacturer. We prefer the rule in other jurisdictions when it is held that the master is not absolved from all duty of inspection, but holds him to only reasonable and practicable inspection. He is not required to tear appliances or machinery to pieces, but should make some test which would satisfy a prudent person that the machinery was safe for use. Sharpley v. Wright, 205 Pa. 253, 54 Atl. 896. Here the appellant made no kind of test. There was no care shown to ascertain that the manufacturer had tested the machine as to being properly put together for use. The machine was too tightly geared, which might have been discovered by an ordinary inspection, but this appellant did not make.

The motion for rehearing is overruled.